UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Antonio HERRERA,
Defendant–Appellant.

No. 90–2091.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1991.

Decided Nov. 27, 1991.

As Amended Dec. 5, 1991.

Joseph R. Wall, Paul Kanter, Asst. U.S. Attys., William J. Lipscomb (argued), Asset Forfeiture Unit, Milwaukee, Wis., for plaintiff-appellee.

Robert M. Courtney (argued), Courtney, Pledl & Molter, Milwaukee, Wis., for defendant-appellant.

Before MANION and KANNE, Circuit Judges, and GRANT, Senior District Judge.*

KANNE, Circuit Judge.

Jose Antonio Herrera pled guilty to a three count indictment charging him with (1) conspiracy to possess with intent to distribute in excess of fifty kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2; (2) possession with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) travel in interstate commerce to facilitate the distribution of cocaine in violation of 18 U.S.C. §§ 1952(a)(3) and (2). The district court sentenced Herrera to 482 months in prison to be followed by an eight-year period of supervised release. He now appeals his sentence. We affirm.

Jose Herrera and his sister, Matilde Herrera, supervised a cocaine distribution ring in Chicago, Illinois. From June 1988 to May 1989, Felipe Borges, a kilogram level distributor of cocaine living in Milwaukee, Wisconsin, regularly contacted Matilde to arrange cocaine purchases. During this period, Jose Herrera was responsible for delivering the cocaine to Borges. Borges typically took delivery either at his apartment in Milwaukee, or at the Herreras' apartment in Chicago. Each cocaine delivery ranged in quantity from one to twenty-seven kilograms. Herrera made the deliveries alone until February 1989, when he was accompanied by Filberto Espino Marin, another member of the Herrera ring.

On May 23, 1989, Borges was arrested in Milwaukee with two kilograms of cocaine. He informed police about his involvement in the Herrera distribution ring, and, after consulting with his attorney, agreed to set up another cocaine transaction. Borges then placed a series of phone calls with the Herreras to discuss terms for another co-

caine delivery. Law enforcement agents recorded each of these conversations. Shortly thereafter on May 27, 1989, Herrera and Marin were arrested while en route from Chicago to Milwaukee. Marin was carrying five kilograms of cocaine.

Herrera and Marin were tried jointly. At trial, Borges testified against both defendants. Following the completion of Borges' testimony, Herrera and Marin both withdrew their pleas of not guilty and entered pleas of guilty.

Prior to Herrera's sentencing hearing, the district court advised Herrera to submit all written objections to the probation department's presentence report by January 12, 1990. Although Herrera did provide the probation department with several generalized objections to the presentence report, he did not include any substantive evidence to support his objections. Rather, at the outset of the sentencing hearing on January 19, 1990, Herrera indicated his preference to present corroborating evidence during the hearing itself. The district court, however, refused to accept this evidence, stating that "I'm simply going to have you deliver all the information that you have ... to the probation department, and we're going to check it out." The district court then scheduled a continued sentencing hearing for April 27, 1990.

The only evidence Herrera presented at the continued hearing was his own testimony. When asked about the quantity of cocaine he delivered to Borges, Herrera testified that he did not bring Borges more than fifty kilograms. The trial court rejected his testimony, and instead adopted the government's contentions contained in the presentence report—based largely on the testimony of Borges—which determined that Herrera distributed at least seventy-seven kilograms of cocaine between June 1988 and May 27, 1989. Accordingly, the district court placed Herrera's responsibility for his charged conduct in excess of fifty kilograms and assigned him a base offense level of 36 pursuant to Sentencing Guideline 2D1.1.

* The Honorable Robert A. Grant, of the Northern District of Indiana, is sitting by designation.

■ We first examine whether the district court committed reversible error by determining that Herrera distributed more than fifty kilograms of cocaine. The law is well-settled that this court will not disturb a district court's sentencing determination if it results from a proper application of the Sentencing Guidelines to factual findings which are not clearly erroneous. 18 U.S.C. § 3742; *United States v. Vopravil*, 891 F.2d 155, 157 (7th Cir.1989); *United States v. Herrera*, 878 F.2d 997, 999–1000 (7th Cir.1989). A finding of fact is clearly erroneous only if, after reviewing the evidence, we are left "with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Findings of fact include calculations of the quantity of cocaine attributable to a defendant's relevant offense conduct and are therefore measured by a clearly erroneous standard. *United States v. Ocampo*, 890 F.2d 1363, 1372 (7th Cir.1989).

Herrera contends that the district court reached an erroneous sentencing determination because it mistakenly relied on the government's analysis of the testimony of Felipe Borges. According to Herrera, Borges' testimony was too "vague and speculative" to form the basis of a quantitative finding that Herrera had distributed more than fifty kilograms of cocaine. Herrera also argues that the district court committed error by improperly basing his sentence on evidence which was previously presented in Marin's earlier sentencing hearing. We find both arguments meritless.

■ Borges' testimony was more than sufficient to establish that Herrera delivered in excess of fifty kilograms of cocaine between June 1988 and May 1989. He testified that from June 1988 to February 1989, he received up to ten kilograms of cocaine from Herrera every two weeks, although the normal quantity delivered was only one kilogram. After February 1989, however, Borges stated that the cocaine deliveries ranged between five and fifteen kilograms of cocaine per trip, including one

delivery containing over twenty-seven kilograms. These larger deliveries occurred biweekly—with the exception of a month-and-a-half period in April 1989 in which no cocaine was purchased—until Herrera's arrest on May 27, 1989. Based on this testimony, the government placed Herrera's responsibility for his charged conduct at seventy-seven kilograms of cocaine.

■ The district court also had ample opportunity to listen to and observe Felipe Borges during his testimony and cross-examination, and thus it could reasonably have found Borges to be a credible witness. As the district court pointed out, both Herrera and Marin apparently thought that Borges' testimony was credible as well:

> [I]t was after Mr. Borges gave his testimony and was subject to considerable cross-examination by Mr. Marin and Mr. Herrera's counsel that both defendants in this case came forward and pled guilty to everything charged in the indictment. There was no Plea Agreement. There was no taking exception to the otherwise more than credible testimony of Mr. Borges.

This court will not substitute its judgment of credibility for that of the trial judge, and therefore we conclude that it was not clearly erroneous for the district court to rely on the government's version of the offense set forth in the presentence report.

■ Herrera's alternative argument that the district court improperly based its findings on evidence previously presented in Marin's sentencing hearing is similarly flawed. To support this contention, Herrera points to the district court's observation that "if there was 50 kilograms that Mr. Marin was involved in, clearly there is more than 50 for Mr. Herrera." Contrary to what Herrera asserts, however, this comment does not indicate that the district court relied on evidence introduced during Marin's earlier sentencing hearing. Rather, in making this statement, the district court was simply addressing the skeptical nature of Herrera's testimony by comparing his culpability to that of Marin, who had only begun delivering cocaine with Herrera in the two months prior to their

arrest. Moreover, the court explicitly indicated that its determination of the quantity of cocaine involved was based on the testimony of Felipe Borges as analyzed by the government and set out in the presentence report:

> So on [the quantity of cocaine] I accept Mr. Borges' testimony on the issue, which has been typed and prepared, the government's analysis of that testimony, and I adopt the government's view as suggested by the probation department in their original report.

Thus, given the district court's express reliance on the government's analysis of the offense contained in the presentence report, any error committed by referring to Marin's sentencing hearing was harmless at best.

■ We next examine whether the district court denied Herrera a fair sentencing hearing by requiring him to present his evidence to the probation department prior to the continued hearing. Herrera argues that since a defendant has no constitutional right to have the government reveal the testimony that it will present at a sentencing hearing, *see United States v. Agyemang,* 876 F.2d 1264, 1270 (7th Cir.1989); *United States v. Cusenza,* 749 F.2d 473, 478 (7th Cir.1984), it necessarily follows that the defendant cannot be compelled to reveal the testimony he will present at a sentencing hearing. We do not agree.

■ The trial judge enjoys a considerable degree of discretion in determining what evidence may be introduced during the sentencing hearing. *See United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). This discretion extends to the precise form of the defendant's opportunity to contest prejudicial or inaccurate information contained in the presentence report:

> The court shall afford the defendant and the defendant's counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy in it.

Federal Rule of Criminal Procedure 32(c)(3)(A). *See also United States ex rel.*

*Welch v. Lane,* 738 F.2d 863, 868 n. 7 (7th Cir.1984). Once the defendant has alleged a factual inaccuracy in the presentence report, the sentencing court must either resolve the factual dispute or determine that it will not use the controverted fact in sentencing. Fed.R.Crim.P. 32(c)(3)(D). Failure to do so will entitle the defendant to resentencing. *See, e.g., United States v. Brown,* 870 F.2d 1354, 1361 (7th Cir.1989); *United States v. Hamm,* 786 F.2d 804, 808 (7th Cir.1986).

In this case, the district court complied with the mandates of Rule 32. Herrera was given an opportunity to review the presentence report, and he subsequently raised several objections to various factual conclusions it contained, including the quantity of cocaine involved. The district court, acting within its discretion under Rule 32(c)(3)(A), determined that these objections were "filled with a lot of generalizations" and therefore asked Herrera to submit his evidence to the probation department for review prior to the continued sentencing hearing scheduled for April 27, 1990. Herrera failed to do so, offering only his own testimony at the continued sentencing hearing. The sentencing court specifically addressed each of the factual inaccuracies alleged by Herrera, and determined that his testimony was not sufficiently credible to support his objections. Therefore, because the district court properly exercised its discretion by requiring Herrera to present his evidence to the probation department prior to its presentation to the court, we conclude Herrera received a fair sentencing hearing.

We likewise reject Herrera's assertion that a remand is required to permit him to present live testimony on the issues of his acceptance of responsibility and his role as a minor participant in the offense. As already indicated, Herrera did not present any evidence in response to the updated presentence report other than his own testimony. There is nothing in the record to suggest that Herrera had other witnesses available, or that any other witness who could have been called had material testimony to offer on these issues.

For the reasons stated in this opinion, we AFFIRM the district court's sentencing of the defendant.