NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 1, 2018
Decided December 20, 2018

***Before***

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-1184

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | 2:17-cr-20045 |
| BALTAZAR JUAN-BALTAZAR, *Defendant-Appellant.* | Colin S. Bruce, *Judge.* |

**O R D E R**

Baltazar Juan-Baltazar is a Guatemalan national. In 2010, he was removed from the United States after being convicted of embezzlement. At some point thereafter, he illegally reentered the United States. In 2017, he was convicted in Illinois of driving under the influence. After serving his sentence for that crime, he found himself in the custody of U.S. Immigration and Customs Enforcement (ICE).

The federal government charged Juan-Baltazar with illegally reentering the country after a prior deportation. He pleaded guilty, and the district court sentenced him to 12 months and a day of imprisonment and 1 year of supervised release. Juan-

Baltazar, whom we presume the government has removed to Guatemala,[1] now appeals the imposition of that term of supervised release. We affirm the sentence.

Juan-Baltazar's Pre-Sentence Report (PSR) recommended the imposition of 1 year of supervised release, the statutory maximum for his crime. The Probation Office cited Juan-Baltazar's prior deportation and reentry to support its conclusion that requiring Juan-Baltazar to report to the Probation Office "is an appropriate tool should he again return to the United States without authority."

Juan-Baltazar objected to the imposition of any term of supervised release. Chapter 5 of the Guidelines provides as follows: "The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c). Application Note 5 to that section explains why this is the rule: "Unless such a defendant legally returns to the United States, supervised release is unnecessary. If such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution." U.S.S.G. § 5D1.1 cmt. n.5. A "court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." *Id.*

The parties and the court engaged at length on the issue of supervised release during Juan-Baltazar's sentencing hearing. When the issue of supervised release first came up, the court noted it had not been imposing supervised release on deportable defendants. But the court also mentioned that it was considering changing this practice. In the court's mind, if a deportable defendant was for some reason released from prison back into the general population rather than deported, being on supervised release would help ensure "that nobody re-arrests him." Juan-Baltazar's counsel opposed this rationale, suggesting it was unlikely that Juan-Baltazar would not be deported after release from prison. The court overruled Juan-Baltazar's objection, announcing it would adopt the Probation Office's position.

---

[1] The government informs us that Juan-Baltazar was released from the custody of the Bureau of Prisons on July 20, 2018, and as of August 31, 2018, Juan-Baltazar was in an ICE detention center awaiting removal to Guatemala. At oral argument on November 1, 2018, Juan-Baltazar's counsel expressed he had no reason to believe that removal has not occurred.

The court ultimately adopted the entirety of the PSR. When the parties made their arguments concerning an appropriate sentence, Juan-Baltazar's counsel again resisted the imposition of a term of supervised release, stating it would not be "a favor" to Juan-Baltazar and that he would still be subject to prosecution.

The court announced a sentence of 12 months and a day of imprisonment and 1 year of supervised release. When imposing the term of supervised release, the court stated its concern that Juan-Baltazar would be "out and not [be] deported and [be] here in the district with no supervision by the Court on him." Juan-Baltazar appeals the imposition of the term of supervised release. He argues the district court misapplied the supervised-release Guideline.

We need not decide whether the district court's reasoning strayed into error because we are convinced that, even if it did, any such error was harmless. An error at sentencing is harmless when "the government [is] able to show that [the error] did not affect the district court's selection of the sentence imposed." *United States v. Clark*, 906 F.3d 667, 671 (7th Cir. 2018) (internal quotation marks omitted) (second alteration in original) (quoting *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009)). The fact that convinces us of the harmlessness of any error is the district court's decision to adopt the Probation Office's position in the PSR. While the court may have entertained some irrelevant factors when considering supervised release, the Probation Office focused on the circumstances of this case. Though the PSR does not elaborate on why requiring Juan-Baltazar to report would be a "useful tool," the reasoning is apparent enough. The Probation Office pointed to Juan-Baltazar's prior deportation and reentry as the basis for its recommendation. Juan-Baltazar is not just a "deportable alien." He is a deportable alien who has already once illegally reentered the country after deportation. Juan-Baltazar's illegal entry into the United States after being deported revealed the deterrent effect of the threat of prosecution had not been sufficient. Supervised release would add an additional layer of deterrence. *See United States v. Heredia-Holguin*, 823 F.3d 337, 340–41 (5th Cir. 2016) (en banc) (recognizing "a term of supervised release could have a 'deterrent' effect"). The court's decision to adopt the Probation Office's position and findings implies agreement. *See United States v. Bauer*, 129 F.3d 962, 966 (7th Cir. 1997) ("The requirement to articulate specific findings may be satisfied by adopting the findings contained in the PSR."); *United States v. Herrera*, 948 F.2d 1046, 1049 (7th Cir. 1991) ("[G]iven the district court's express reliance on the government's analysis of the offense contained in the presentence report, any error committed by referring to [a codefendant's] sentencing hearing was harmless at best."). That agreement controls the outcome. We AFFIRM.