In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2353

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KENNETH A. DACHMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-cr-00504— **James B. Zagel**, *Judge.*

ARGUED JANUARY 9, 2014 — DECIDED FEBRUARY 18, 2014

Before MANION and SYKES, *Circuit Judges,* and GRIESBACH,
*District Judge.**

MANION, *Circuit Judge.* Kenneth Dachman was indicted by
a grand jury on eleven counts of wire fraud for stealing funds
elderly individuals had invested in his three sleep-related
illness-treatment companies. He pleaded guilty to all eleven

* William C. Griesbach, Chief District Judge for the Eastern District of
Wisconsin, sitting by designation.

counts and, at sentencing, the district court denied him credit for acceptance of responsibility and sentenced him to 120 months' incarceration. On appeal, Dachman argues that the district court erred in calculating the loss amount, by denying him credit for acceptance of responsibility, and by imposing an "objectively unreasonable" 120-month term of imprisonment in light of his severe infirmities. We affirm.

## I. Factual Background

Beginning in June 2008, and continuing until September 2010, Dachman promoted and participated in a scheme to defraud investors. He operated three sleep-related illness-treatment companies and sold shares of these companies to the public. Through his offer and sale of these shares, Dachman raised over $4 million from fifty-one investors.

From the outset, Dachman engaged in a pattern of deception. Between July 2008 and January 2009, he falsely represented to fifteen investors that their combined invested funds of approximately $1.4 million would be used to operate one of Dachman's sleep-treatment companies when, in fact, he had used almost $1 million of those funds for purely personal reasons, including over $200,000 on personal stock trading, over $180,000 on a tattoo parlor, and over $160,000 in checks payable to him and his wife. During this time, the businesses had not yet received any income.

But Dachman's false representations did not begin and end with his deceptions about the status of investments in his sleep-related illness-treatment businesses. The falsehoods also pervaded his personal narrative, which was vital to securing—and retaining—investors. Dachman represented to

prospective investors that he personally guaranteed the repayment of their principal, but in reality he did not have the assets to do so. He represented to potential and actual investors that he was a successful businessman and researcher when his seven bankruptcies obviously proved otherwise. And he falsely represented to prospective investors and investors that he had obtained a Ph.D. from Northwestern University when in reality he had never even attended that institution.

Unsurprisingly, due to Dachman's deceptions and theft, his companies did not have sufficient revenue to pay the necessary returns to investors. Nor did he have the financial ability to personally guarantee the investors' principal, contrary to his prior representations. Consequently, the investors brought suit against Dachman and secured judgment in the amount of $2.5 million. *Duff v. Dachman*, No. 10-cv-06162 (N.D. Ill., July 11, 2011). Records reflected that Dachman spent the stolen funds on a tattoo parlor; family vacations and cruises to Italy, Nevada, Florida and Alaska; a new Land Rover; rare books; and to fund personal stock trading and gambling.

On July 26, 2011, subsequent to this civil judgment, a federal grand jury returned an eleven-count indictment charging Dachman with wire fraud. On July 31, 2012, he attempted to enter a plea of *nolo contendere*. On October 3, 2012, Dachman withdrew his plea and pleaded guilty to all eleven counts of the indictment. Along with his plea, he submitted a plea declaration whereby he admitted that he was "guilty of taking approximately $700,000 dollars in bonuses and fees above reasonable salary"; that he was "guilty of making personal guarantees or returns on investments without sufficient means to support them"; and that he was "guilty of

failing to make clear to investors [his] educational and gradu-ate credentials." The district court accepted the guilty plea and set the matter for sentencing.

On January 17, 2013, the district court held a sentencing hearing where, among other things, it heard testimony from three victims of Dachman's fraud. At this hearing, Dachman raised objections to the PSR's calculation of the guidelines on loss and acceptance of responsibility. With respect to loss, Dachman argued that the correct calculation of the loss amount should be $700,000—the amount by which he personally benefitted—which would result in a 14-level increase under the guidelines. The government maintained that the proper calculation of the loss amount was approximately $4 million, which would result in an 18-level guideline increase. The government argued that this number was appropriate because the pool of funds the victims lost by investing with Dachman was $4 million.

The district court found that the appropriate loss amount under Guideline § 2B1.1(b) was the approximately $4 million investors lost. Accordingly, the court applied an 18-level enhancement. The district court also rejected Dachman's argument that he warranted a two-level reduction for accep-tance of responsibility under Guideline § 3E1.1(a). In his allocution at the sentencing hearing, Dachman claimed he was not the one who asked investors for money, that the business was a success, and that his partner, Scott A. Wolf, was responsible for raising money and communicating with investors. The district court recognized that Dachman stated the "absolute minimum" that qualified him to proceed with a

guilty plea, but found that he did not "fully accept responsibility for the damage he did, for his base motives in doing it[.]"

The district court then heard argument from the parties about the appropriate sentence under the factors set forth in 18 U.S.C. § 3553(a). Dachman's primary argument in mitigation was that the Bureau of Prisons (BOP) was insufficiently equipped to handle his medical conditions. Dachman's medical conditions include morbid obesity, diabetes, hypertension, hyperlipidemia, severe gout, colon cancer, and coronary artery disease. At sentencing, Dachman's counsel stated: "[O]ne of the conditions the Court should consider is the necessity for medical treatment." Dachman's counsel argued that he required specialists to address his medical issues on a "regular basis" and presented the testimony of his brother, Dr. Carey Dachman, at sentencing. The focus of Dr. Dachman's testimony was that the BOP only provided physician assistants and that they were ill-equipped to treat Dachman. Dachman's counsel expressed his belief that the BOP could not provide adequate life-sustaining treatment. "The very easy, economic and insurance reason is that malpractice insurance will not cover a specialist doctor going into an inmate population to treat an inmate. That the best Mr. Dachman in prison can expect is to be seen by physician assistants and the occasional visit from a general internist[.]"

The government countered that the BOP could provide adequate medical care for Dachman. The government had submitted Dachman's publicly-filed medical records to the BOP, and provided the district court with a letter from Dr. Paul Harvey dated October 24, 2012, attached to the PSR, that outlined Dachman's medical issues and affirmed that the BOP

had facilities that could provide the necessary medical treatment for defendant.

In announcing its sentence, the district court stated: "I think this was a very damaging offense for individuals[.]" The district court noted that the offense "occurred after what appears to be many, many years of deceptive conduct, one conviction for deceptive practices; a civil litigation strategy that, to my mind, speaks a guilty mind." Further considering his history and circumstances, the district court recognized that Dachman had evaded the law and punishment for his behavior for many years. The district court found Dachman needed deterrence and he did not have respect for the law, stating: "There are instances which indicate that he does not respect the law, does not abide by the law, looks around for ways to avoid the law. Perhaps the most unfortunate thing is that he didn't pay a greater penalty for his prior business practices[.]"

In addressing Dachman's primary argument in mitigation, the district court determined that there were BOP medical facilities that had the ability to care for him, and thus rejected his position that he couldn't be sent to prison. The district court stated: "I recognize his medical issues, and in this case, I will not order his surrender to custody until a reasonable arrangement has been made for his incarceration." The district court stated that there were medical facilities offered by the BOP, such as in Springfield, Missouri. The district court also noted there was a medical center in Butner, North Carolina. The district court stated that, at these facilities, there were specialists available to treat inmates, and not just generalists and physician assistants.

The district court then announced its sentence and sentenced Dachman to 120 months' imprisonment, which was within his sentencing guideline range of 108 to 135 months' imprisonment. The district court scheduled a status hearing to allow Dachman to recommend a BOP facility for his incarceration.

After the sentencing hearing, the parties appeared a final time before the district court. The government presented further information from Dr. Harvey about the BOP facilities available to treat Dachman. And Dachman submitted a letter claiming that no BOP facility could care for him and so he would not be taking the court up on its invitation to submit a recommendation.

On June 13, 2013, the district court entered the judgment and commitment, which identified all the terms of its sentence that it had announced on January 17, 2013. On July 3, 2013, Dachman asked the district court to stay his surrender date and supplied more medical information. The government filed a response objecting to the stay and submitted additional information that the BOP was ready to care for Dachman.

The district court denied Dachman's motion to stay the surrender date. Dachman then filed a motion for bond pending appeal and the government filed its response. The district court held a hearing on the matter, considered the information from both parties, and heard testimony from Dachman's BOP treating physician, Dr. Derrick Phillips, telephonically from Butner, North Carolina. After considering the information presented, the district court denied Dachman's motion for bond pending appeal. This appeal followed.

## II. Discussion

On appeal, Dachman argues that the district court erred (1) in calculating the loss amount, (2) by denying him credit for acceptance of responsibility, and (3) by imposing an "objectively unreasonable" 120-month term of imprisonment in light of his severe infirmities.

Dachman first argues that the district court incorrectly calculated his guidelines range in this case because the district court failed to credit him with $2,175,953.34 in operational expenditures incurred by his business entities. Dachman argues that if the district court had given him credit for operational expenditures, "[t]his adjusted loss figure would have yielded a 16-point upward adjustment pursuant to U.S.S.G. § 2B1.1(b)(1)(I) (loss of more than $1 million), rather than the 18-point upward adjustment that was made on the basis of the $4,037,020.54 loss figure pursuant to §2B1.1(b)(1)(J) (loss of more than $2.5 million)." The government asserts that this argument is forfeited because it was not presented to the district court. In Dachman's sentencing memorandum, he argued that the loss calculation in this case should be $772,784, which he identified as his gain or the amount that he claims he benefitted. Dachman goes on to argue that the enhancement should be 14 levels for this loss amount. Dachman's counsel repeated this argument to the district court at the sentencing hearing stating: "we believe that the correct calculations of the loss should be what Mr. Dachman erroneously put into his pocket, which we believe is in the area of $700,000." Counsel asked the district court to find that the loss calculation was under $1 million, which would result in a 14-level enhancement.

The record clearly shows that Dachman invited the district court to construe the loss as Dachman's gain in the amount of $772,784—an amount that advises a 14-level enhancement. But on appeal, Dachman abandons this argument.[1] Instead, he argues that the proper calculation looks to the amount actually spent on business expenditures—in this case some $2.17 million—that when deducted from the $4 million pool, results in an amount that advises a 16-level enhancement. Dachman's business expenditure argument—freshly-crafted on appeal—was not presented to the district court, so it is forfeited. *United States v. Middlebrook,* 553 F.3d 572, 577 (7th Cir. 2009) (holding that an argument on appeal regarding the loss amount under the guidelines that differed from the argument raised in the district court was forfeited).

A forfeited issue is reviewed for plain error. *United States v. Richardson,* 238 F.3d 837, 841 (7th Cir. 2001). "The plain error standard allows appellate courts to correct only particularly egregious errors for the purpose of preventing a miscarriage of justice." *United States v. Conley,* 291 F.3d 464, 470 (7th Cir. 2002). The district court did not commit plain error when it imposed an 18-level enhancement on Dachman. Application Note 3(A)(i) to Guideline § 2B1.1 defines "actual loss" as "reasonably foreseeable pecuniary harm that resulted from the offense." The guidelines further define "reasonably foreseeable

---

[1] Appellant Br. 9 n.5 ("This Brief will not argue, as defense counsel did at sentencing, that loss should be measured by the amount of the defendant's gain."). Dachman likely abandons this argument because Application Note 3(B) to Guideline § 2B1.1 states that gain to a defendant shall be used only when loss cannot be reasonably determined (as it can and has been in this case).

pecuniary harm" as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known was a potential result of the offense." U.S.S.G. § 2B1.1, App. Note 3(A)(iv). This number consists of the "amount put at risk" by the defendant who misappropriated the money. *United States v. Swanson*, 483 F.3d 509, 513 (7th Cir. 2007); *United States v. Bonanno*, 146 F.3d 502, 509–10 (7th Cir. 1998) ("The relevant inquiry is not 'How much would the defendants probably have gotten away with,' but, rather, 'How many dollars did the culprits' scheme put at risk?'").

In this case, the public harm is the loss suffered by fifty-one investors totaling $4 million. Dachman argues that *Swanson* holds that "loss cannot include the value of services a defendant legitimately performed for the victims of his fraud." Appellant Br. 21 (quoting *Swanson*, 483 F.3d at 509). But this argument ignores the fact that the "services" Dachman's investors sought in connection with their investment were the opportunity to bring to the market fully-capitalized sleep-illness treatment businesses. Dachman's theft doomed these enterprises and ensured their collapse. The investors received no legitimate performance. Accordingly, the district court did not commit any error—let alone plain error—when it imposed an 18-level enhancement on Dachman because fraud involving some of the funds placed the entire $4 million pool of funds at the risk of loss.

Next, Dachman argues that he is entitled to a two-level reduction for acceptance of responsibility. Application Note to Guideline § 3E1.1 states that "A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." On the contrary, whether a defendant has

fully accepted responsibility for his offenses is "a finding of fact to be made by the trial court, and is based largely on the sentencing judge's determinations regarding the defendant's credibility and conduct." *United States v. Frykolm*, 267 F.3d 604, 610 (7th Cir. 2001). We give great deference to the sentencing judge because he is in a "unique position to evaluate a defendant's acceptance of responsibility." *Id.* at 610–11. Consequently, we review a district court's decision not to apply a two-level guidelines reduction for acceptance of responsibility for clear error. *Id.* at 611.

The evidence was more than sufficient to support the district court's conclusion that Dachman did not qualify for a two-level acceptance of responsibility reduction. Dachman's affirmative representations in both his written statement submitted to the district court prior to sentencing and his allocution to the district court at sentencing demonstrated that he failed to accept responsibility for his fraudulent conduct. In his written statement, he made numerous couched admissions of guilt. For example, he indicated that he "never intended to defraud or harm anyone." He also claimed the "absolute right" to set his own "salary" and that he took "fees" in "advance" based on purported Medicare reimbursements he expected to receive in the future. At sentencing, the district court observed that he had stated the "absolute minimum" that qualified him to proceed with a guilty plea. The district court acknowledged that "he did do enough for the guilty plea, but acceptance of responsibility requires something broader than that. He accepts responsibility that he is the one responsible for the failure; he does not, in my view, fully accept responsibility for the damage he did, for his base motives in doing it[.]"

Dachman's couched admission of guilt continued through sentencing, where he stated "[t]here are so many facts and details that have not been adjudicated because I chose to plead guilty. I did so at the advice of physicians. Based upon what was said in here, I think perhaps I made a mistake." Dachman also claimed he was not the one who asked investors for money, that the business was a success, and that his partner, Scott A. Wolf, was the individual responsible for raising money and communicating with investors. The district court considered these statements and stated:

> … I've heard it many times in fraud cases that somebody said, "I didn't sell the land, I didn't pitch the investment." In some cases, its absolutely true, so what you look to is the person who took the money, and that, in this case, was this defendant. I don't accept the idea that this was an accident, a misjudgment. I think it was greed.

Given these facts, the district court's decision to withhold the two-level reduction for acceptance of responsibility is well-supported by our precedent.[2] *See United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010) ("blaming someone else for one's own actions or minimizing one's involvement in the offense is not the sort of genuine contrition the acceptance of responsibility

---

[2] The government also argues that Dachman's initial attempt to plead *nolo contendere*—a theory that by its own terms involves no admission of facts or acceptance of responsibility—precludes him from receiving a sentencing reduction for acceptance of responsibility. We need not consider this question, though, because the other facts were more than sufficient to justify the district court's denial of acceptance of responsibility.

reduction seeks to reward"); *United States v. Zehm*, 217 F.3d 506, 515-516 (7th Cir. 2000) (withholding acceptance of responsibility reduction when the defendant denied responsibility for the full extent of his involvement in the charged conspiracy in a statement at odds with witness testimony). In this instance, Dachman's expression of regret for pleading guilty and then attempting to shift the blame at his own sentencing hearing is not the sort of contrition that warrants a two-level reduction for acceptance of responsibility. Consequently, the district court's decision not to reduce Dachman's sentence was not clear error.

Dachman's final argument is that his within-guidelines 120-month sentence should be vacated because it is objectively unreasonable in light of his severe infirmities. "We review a district court's sentencing determination both for procedural soundness and for substantive reasonableness." *United States v. Patrick*, 707 F.3d 815, 818 (7th Cir. 2013). Although Dachman could be clearer, it appears that he is raising both procedural and substantive challenges to his sentence, so we address each argument in turn.

### A. *Dachman's challenge to the procedural soundness of his 120-month sentence*

"We review the procedural challenge *de novo*." *United States v. Brown*, 732 F.3d 781, 785 (7th Cir. 2013). Dachman argues that his sentence was procedurally unreasonable because the district court failed to properly weigh the § 3553(a) factors in

fashioning his sentence.[3] He argues that the district court failed to adequately consider the factors of § 3553(a)(1) (directing courts to consider the history and characteristics of the defendant) and § 3553(a)(2)(D) (directing courts to consider the need for medical care and other correction treatment in the most effective manner).

Dachman's principal argument in mitigation at his sentencing hearing was that he should be given home confinement rather than incarceration because the BOP is unable to care for him due to his morbid obesity (the PSR filed indicates that he weighs 440 pounds); severe uncontrolled kidney disease;

---

[3] As a preliminary matter, we note that Dachman's evidentiary support for this mitigation argument includes, in part, medical evidence introduced in the district court after his sentence was imposed. Appellant Br. 35–40; Reply Br. 20–23. At the conclusion of Dachman's sentencing hearing the district court stated: "I will expect to see counsel in about two weeks time to report to me on the status of the surrender to *serve the sentence that's been imposed.*" Sent. Tr. 53 (emphasis added). But as the government points out, most of the record that Dachman cites regarding his various medical issues are matters that were brought before the district court post-sentencing and were not part of the sentencing record. Gov't Br. 37. Dachman's concession on this point is qualified ("[t]he government is half correct"), but he candidly concedes that the district court could not have considered this material prior to sentencing. Reply Br. 20 ("Certain information set forth in Mr. Dachman's opening brief on the topic of the substantively reasonable sentence was, indeed, unknown to the District Court at the time the sentence was pronounced."). On appeal, we only consider evidence that was properly and timely introduced before the district court. Consequently, we confine our review of the procedural soundness of Dachman's sentence to the record and the arguments he advanced in the district court through the conclusion of his January 17, 2013 sentencing hearing.

history of kidney cancer with one kidney removed and the other barely functional; partially uncontrolled diabetes; gout and arthritis; neuropathy; aggressive heart-disease with history of stenting; hypertension; history of metastatic colon cancer; and diabetic retinopathy with risk of blindness. Dachman argues that the district court failed to consider this argument in mitigation when it imposed his sentence.

Dachman's contention, however, is belied by the record. After hearing and considering testimony on this precise issue from Dachman's brother, a medical doctor, the district court stated: "I recognize [Dachman's] medical issues, and in this case, I will not order his surrender to custody until a reasonable arrangement has been made for his incarceration." The district court then stated that there were adequate BOP medical facilities in Springfield, Missouri, and Butner, North Carolina. The district court stated further that, at these facilities, there were specialists available to see inmates, and not just generalists and physician's assistants. Thus, the district court undeniably considered and rejected Dachman's principal argument in mitigation that he should not be incarcerated because no BOP facility could care for him. *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010) ("the fact that the district court acknowledged this argument is dispositive—as long as a sentencing court considers the arguments made in mitigation, even if implicitly and imprecisely, the sentence imposed will be found reasonable."). Simply because the district court disagreed with the weight Dachman believes his mitigation argument is worth does not prove that the district court failed to consider it. *United States v. Haskins*, 511 F.3d 688, 696 (7th

Cir. 2007); *United States v. Dean,* 414 F.3d 725, 729–30 (7th Cir. 2005).

"The court is required to consider aggravating and mitigating factors under 18 U.S.C. 3553(a) *before* imposing a sentence." *United States v. Vizcarra,* 668 F.3d 516, 527 (7th Cir. 2012) (emphasis added). That is exactly what it did in this case. After the district court considered Dachman's mitigation argument, it imposed a sentence of 120 months on him. After imposing Dachman's sentence, the district court then concluded its remarks by inviting Dachman and his counsel to return to court for a status hearing to recommend a BOP facility for his incarceration. So not only did the district court explicitly take Dachman's infirmities into consideration before imposing his sentence, he recognized those problems by affording Dachman the opportunity to recommend the facility he and his physicians deemed best-suited to care for him. The district court's concern for Dachman also resulted in the delay of his surrender to the authorities until after a suitable BOP placement was determined—more than *six months* after sentencing.

The thrust of Dachman's argument is that the district court's findings were not specific enough. But we do not require a district court to make specific findings concerning the § 3553(a) factors so long as it is clear he considered them and we are able to review the sentence, which it did and we are. *United States v. Collins,* 640 F.3d 265, 271 (7th Cir. 2011) (holding that so long as the district judge has *considered* the applicable sentencing factors and the arguments made by the parties, then the judge has satisfied the review standards which must be met) (emphasis in original). Here, the sentencing transcript reflects that the district court considered: (1) the § 3553(a)

factors, (2) the written and oral testimony of Dachman's physicians, and (3) the written submissions the government received from the BOP prior to concluding that the BOP could care for him and that a within-guidelines sentence was warranted. After considering the § 3553(a) factors at Dachman's sentencing hearing and his primary argument in mitigation (that his health was too poor to be incarcerated and that the BOP could not adequately care for him), the district court concluded that the presumptively reasonable, within-guidelines sentence of 120 months was appropriate given that Dachman's conduct caused a number of elderly individuals to lose significant sums of money and in light of his otherwise sordid "business" history.[4] And we bear in mind that a within-guidelines sentence (as here) requires less explanation. *United States v. Lyons*, 733 F.3d 777, 785 (7th Cir. 2013). Consequently, the district court did not err by imposing a presumptively reasonable, within-guidelines, 120-month sentence on Dachman. *See United States v. Pilon*, 734 F.3d 649, 656 (7th Cir. 2013) (rejecting § 3553(a)(1) and § 3553(a)(2)(D) mitigation arguments for reduction or relief from sentence where wire fraud defendant suffered from sarcoidosis, asthma, an irregu-

---

[4] The record indicates that throughout at least some period of the duration of Dachman's theft he received monthly disability income of $1,450.00. *See* Supplemental Report filed by the Office of the Chief Probation Officer at 2 (filed January 15, 2013). So while Dachman was stealing from investors he was simultaneously representing to the government (falsely, based on Dachman's own description of his activities in the "Explanation of Events Leading to the Indictment" he filed in this case) that he was unable to work.

lar heartbeat, a fused vertebrae in her spine, suffered from growths in her eyes, and vision problems).

### B. *Dachman's challenge to the substantive reasonableness of his 120-month sentence*

Finally, it appears that Dachman also raises a substantive reasonableness argument. "Our review of the substantive reasonableness of the sentence is more deferential; we look only for an abuse of discretion." *Brown*, 732 F.3d at 785. "A correctly calculated, within-guidelines sentence is entitled to a presumption of reasonableness." *Pilon*, 734 F.3d at 656. As he concedes, Dachman's "120-month sentence was within the advisory sentencing guideline range," so the burden he must overcome to prove its unreasonableness is a hefty one. Appellant Br. 29. Nevertheless, Dachman argues that it was objectively unreasonable for the district court to incarcerate him given his litany of health problems. But the sick "do not have a license to commit crime." *United States v. Moreland*, 703 F.3d 976, 991 (7th Cir. 2012). And as the record makes clear, the district court concluded, based on supporting evidence from the government, that the BOP can care for Dachman. Accordingly, Dachman's infirmities do not render his within-guidelines sentence unreasonable and it was not an abuse of discretion for the district court to sentence him to 120 months' imprisonment.

### III. Conclusion

The district court calculated the loss at $4,000,000, and that finding was not plain error. Rather, it represented the amount investors lost due to Dachman's fraud. The district court also did not abuse its discretion in denying Dachman a two-level

reduction for acceptance of responsibility, given Dachman's statements minimizing his responsibility and placing blame on others. Finally, the district court's within-guidelines sentence of 120 months was both procedurally and substantively sound. The district court considered the §3553(a) factors, including Dachman's arguments based on his numerous health issues. For these reasons, we AFFIRM Dachman's 120-month sentence.