In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3765

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN CASTRO-ALVARADO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-CR-415 — **Virginia M. Kendall**, *Judge.*

ARGUED MAY 22, 2014 — DECIDED JUNE 16, 2014

Before POSNER, FLAUM, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Juan Castro-Alvarado[1] was con-
victed of one count of illegal reentry in violation of 8 U.S.C.
§ 1326(a) and 6 U.S.C. § 202(4). He pleaded guilty and the
district court sentenced him to 77 months' imprisonment—a
term at the bottom end of the advisory Guidelines. On appeal
he raises two challenges to his sentence. First, he argues that

---

[1] We refer to Castro-Alvarado as "Castro" throughout this opinion.

the district court committed procedural error by not expressly addressing his "fast-track disparity" argument at sentencing. Second, he argues that his sentence was substantively unreasonable in light of his proffered mitigation factors—specifically, his rehabilitation from drug and alcohol abuse, family and work history, and the remoteness of his criminal history. We affirm.

## I. BACKGROUND

Castro is a native and citizen of Mexico. He entered the United States without inspection when he was approximately 14 years old. His criminal history is extensive. He was convicted of eleven offenses while he was in the United States between 1979 and 2001. Six of his convictions were for drug trafficking-related offenses. He was also convicted twice of illegal entry. Castro was removed from the United States a total of eight times in 1980, 1981, 1984, 1989, 1990, 1994, 1997 and 1998. He reentered illegally after his last removal on or about May 5, 2000. He has used twenty-three identities in the past in relation to encounters with law enforcement. On or about April 6, 2013, he encountered immigration officials as part of a Fugitive Operations program that uses public records to locate illegal aliens. On May 15, 2013, the grand jury returned a one-count indictment charging him with illegal reentry pursuant to 8 U.S.C. § 1326(a). On August 29, 2013, he changed his plea to guilty via a written plea agreement.

Using the 2012 Sentencing Guidelines, the probation officer assigned a base offense level of 8 and a 16-level enhancement under Guideline § 2L1.2(b)(1)(A), because Castro had been convicted of a drug trafficking offense for which the sentence

imposed exceeded 13 months' imprisonment. He had a total of 13 criminal history points, placing him in criminal history category VI. Under the sentencing guidelines, his advisory range was 77–96 months' imprisonment.

The government filed a sentencing memorandum arguing for a within-Guidelines sentence based on Castro's criminal record, immigration history, use of aliases, and risk of recidivism. The government also cited the need for general deterrence. In response, Castro filed a sentencing memorandum arguing for a below-Guidelines sentence based on "fast-track disparity," his rehabilitation from drug and alcohol abuse, family and work history, and the remoteness of his criminal history.

Castro's sentencing hearing was held on November 25, 2013. At sentencing, there was no dispute regarding the calculations or the advisory Guidelines range. Castro, however, argued that his criminal history occurred many years ago and that he had rehabilitated himself, as demonstrated by his family circumstances and work history. Regarding the use of aliases, he proffered that many of them were variations of his last names. His attorney argued that based on her experience in other districts, the fast-track program operated on a "case by case" basis suggesting that the court should consider Castro's eligibility for a downward departure from the Guidelines based on his circumstances. Castro also spoke and represented to the court that he would not return to the United States. The government replied that Castro was not supposed to be working and given that he has used aliases, there were concerns he may have been working under someone else's

identity. Castro responded he was self-employed and using his own identity.

The district court then considered the § 3553(a) factors. The district court found that Castro's history of drug dealing gave it "significant pause … because not only then is someone here illegally, but someone is here illegally who has been contributing to the demise of society … ." The court observed that Castro was involved in drug trafficking for a prolonged period of time into his adulthood. The district court acknowledged Castro's representation that he was rehabilitated by stating his record did reflect he had changed. But the court expressed the need to address the issue of general deterrence to others who may be tempted to return illegally multiple times, and the court found his immigration and criminal history demonstrated that he was a recidivist who was likely to return. Finally, the district court found that Castro's use of aliases was of concern because of the "impact on both society's programs for individuals as well as all of our work environment." The district court then imposed a sentence of 77 months' imprisonment on Castro. This sentence was at the low end of Castro's range.

## II. ANALYSIS

### A. "Fast-track disparity"

"We review the district court's interpretation and application of the Guidelines *de novo* and findings of fact for clear error." *United States v. White*, 737 F.3d 1121, 1139 (7th Cir. 2013). A sentencing court commits procedural error where it fails to calculate or improperly calculates the Guidelines range, treats the Guidelines as mandatory, fails to consider the

§ 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the basis for the chosen sentence. *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008); *Gall v. United States*, 552 U.S. 38, 51 (2007).

Castro's first argument on appeal is that the district court committed procedural error when it failed to explicitly address his argument relating to "fast-track disparity." Under the Department of Justice's fast-track program, when an illegal reentry prosecution is initiated and the defendant promptly pleads guilty, the United States attorney may—at his discretion—recommend either an additional 2- or 4-level downward departure pursuant to U.S.S.G. §5K3.1, in addition to the standard 2-level downward departure for acceptance of responsibility and 1-level downward departure for timely notification of the intention to plead guilty authorized pursuant to U.S.S.G. § 3E1.1(a),(b).[2]

Castro argues that because he filed no pre-trial motions and entered a prompt guilty plea, "his readiness to save the Government time and resources was more analogous to that of defendants sentenced under the 'fast-track' procedures established in some districts, but not in the northern district of Illinois." Appellant Br. 10. In response, the government points out that "at the time of sentencing this district *was* participating in a national fast-track program [and thus] defendant's argument has no basis in fact. The defendant's argument was,

[2] *See Memorandum from Deputy Attorney General James M. Cole to All United States Attorneys, Department Policy on Early Disposition or "Fast-Track" Programs* (Jan. 31, 2012), available at www.justice.gov/ dag/fast-track-program.pdf.

and continues to be based on the faulty premise that there is no fast-track program in place in the Northern District of Illinois." Gov't Br. 8–9 (emphasis added); *United States v. Garcia-Ugarte,* 688 F.3d 314, 317 n.1 (7th Cir. 2012) (recalling that on March 12, 2012 the United States Attorney for the Northern District of Illinois implemented the fast-track program). Further, the government argues that the program is discretionary and that Castro was ineligible for the program on the basis of his extensive criminal history. *See United States v. Ramirez*, 675 F.3d 634, 643 (7th Cir. 2011). In reply, Castro "agrees that the statement at page 10 of his brief that this district did not then have such a program was mistaken," but disclaims that his opening brief argues that he is entitled to fast-track treatment, claiming instead that his opening brief merely asserts that he "deserves recognition beyond the standard three points [reduction]." Reply Br. 2.

Castro appears to be arguing that because the district court failed to address his argument, his sentence should be reduced to bring it in parity with the sentences of similarly situated defendants who were granted a reduction under the fast-track program. In support, he cites *United States v. Reyes-Hernandez*, 624 F.3d 405 (7th Cir. 2010), wherein we held that district courts in non-fast-track districts are not precluded from reducing a defendant's sentence to avoid disparities with sentences imposed on similarly situated illegal reentry defendants in fast-track districts. *Id.* at 421–22. In *Reyes-Hernandez*, the defendant was prosecuted in a district that did not implement the fast-track program, so he could not request the fast-track reduction from the government. *See United States v. Anaya-Aguirre,* 704 F.3d 514, 516 n.1 (7th Cir. 2013) ("[Until

January 2012] none of the districts in the Seventh Circuit had fast-track programs."). Thus, the district court's exercise of discretion in *Reyes-Hernandez* was *in lieu of* the government's exercise of discretion. Here, the district implemented the fast-track program and Castro sought the benefit of that program, but the government rejected Castro's request for a reduction on the basis of his "criminal history, and also the number of removals that he's had in the past."

In districts where the fast-track initiative is implemented, it is within the government's discretion to determine a defendant's eligibility for a reduction under it. *See, e.g., Garcia-Ugarte,* 688 F.3d at 317 n.1; *Reyes-Hernandez,* 624 F.3d at 421 ("within fast-track districts, the government must decide whether to offer a defendant the opportunity to opt into the program, and then the government must make a motion to the sentencing judge requesting the departure."). In this case, Castro effectively sought a second bite at the apple by asking the district court to exercise *its* discretion to effectively overturn the government's decision by reducing his sentence to reflect a fast-track reduction. Under these circumstances, the district court did not procedurally err by rejecting Castro's fast-track argument without expressly articulating its reason for doing so. *See Ramirez*, 675 F.3d at 636 & 640 n.2 (resolving the question of "when is a district court *obliged* to comment on a fast-track argument" and "hold[ing] that a district court need not address a fast-track argument unless the defendant has shown that he is similarly situated to persons who actually would receive a benefit in a fast-track district.") (emphasis in original). As *Ramirez* makes clear, the "disparity" concerns raised by Castro in this case are wholly inapplicable to him

because that concern relates to disparity as it may impact defendants in *non-fast-track* districts.

**B. Substantive reasonableness**

Castro's second argument on appeal is that the district court imposed a substantively unreasonable sentence of 77 months' imprisonment in light of his rehabilitation from drug and alcohol abuse, family and work history, and the remoteness of his criminal history (notwithstanding his continued illegal presence). We review the substantive reasonableness of a defendant's sentence for an abuse of discretion. *United States v. Dachman*, 743 F.3d 254, 263 (7th Cir. 2014). Where, as here, the district court sentenced the defendant to a within-guideline range sentence, there is a presumption of reasonableness. *Id.* "[S]o the burden [Castro] must overcome to prove its unreasonableness is a hefty one." *Id.* "To sustain the presumption, a district court need provide only a justification for its sentence 'adequate enough to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *United States v. Pilon*, 734 F.3d 649, 656 (7th Cir. 2013).

Here, the district court considered both aggravating and mitigating factors before imposing its sentence on Castro. *Dachman*, 743 F.3d at 262.

On the aggravating side of the scale, the district court expressed concern with Castro's history of drug-trafficking and the fact that it continued beyond his years as a young man, into his thirties. The court also remarked on the adverse impact that drug crimes have on the social fabric of society. Furthermore, the court was understandably troubled by Castro's repeated

disregard for United States immigration law and his failure to learn from his mistakes. As the district court recognized,

> [h]e hasn't been deported once or twice or three or four times. He's been deported eight times. What that means is that eight specific judges have said, 'Do not come back into this country,' … and he keeps coming back into the country.

The district court was clear that Castro's egregious criminal history—including his many deportations and prior unlawful reentry convictions—significantly influenced its determination of Castro's sentence.

On the mitigating side of the scale, it is clear that the district court attributed credit to Castro for his work and family history—refuting Castro's precise argument to the contrary. After identifying a host of aggravating factors, the district court stated "[a]s far as his personal characteristics, I don't doubt that there's been some type of rehabilitation in most recent years when he appears to be a family man." Although it acknowledged Castro's transformation to that of a "family man," the district court balanced that mitigating factor against his drug trafficking history, undeterred practice of breaking immigration laws, his particularly high likelihood of continued recidivism, and his use of aliases. *See United States v. Marin-Castano*, 688 F.3d 899, 905 (7th Cir. 2012) ("Not only did the district court specifically address both general and specific deterrence, the seriousness of illegal reentry and the need to enforce laws which have been created to protect the public, but

it specifically referenced [the defendant], including his family …”).

On balance, the district court found that Castro's proffered mitigation regarding his stable family life and good work history was dwarfed by his twenty-plus-years-long record of illegal activity in one form or another. The district court did not abuse its discretion in reaching that conclusion. Like the district court, we recognize that Castro has achieved some rehabilitation and has put behind him some poor decisions that adversely impacted his younger years. But Castro's avoidance of legal entanglements—a standard expected of everyone—does not outweigh the other considerations discussed by the district court at sentencing.

Finally, Castro argues that he is "not typical of Category VI criminal history offenders" and that the "remoteness of his criminal history" counsels towards a below-Guidelines sentence because his drug trafficking convictions were all in the 1990s and he has had no further encounters with the law in the past thirteen years. Appellant Br. 19–22. Castro analogizes his case to *United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009). *Amezcua-Vasquez* was an unusual case where a permanent resident convicted of two crimes of violence in 1981 was removed twenty-five years later in 2006. *Id.* at 1052. Two weeks later, he reentered the United States illegally and was indicted under 8 U.S.C. § 1326(a). *Id.* Shortly after, *Amezcua-Vasquez* pleaded guilty. *Id.* His advisory sentencing guideline range was 46–57 months' imprisonment, and he was sentenced to 52 months. *Id.* at 1053. On appeal, the Ninth Circuit vacated his sentence on substantive reasonableness grounds, holding

"that the district court abused its discretion when it applied the Guidelines sentence to Amezcua without making allowances for the staleness of the prior convictions and his subsequent lack of any other convictions … ." *Id.* at 1055–56. The present case is easily distinguishable from *Amezcua-Vasquez.* Other than both involving illegal reentry prosecutions, they share little else in common. In *Amezcua-Vasquez*, the defendant had two convictions twenty-five years prior to his single illegal reentry conviction, and he was sentenced to the higher end of his Guideline range. Here, Castro has accumulated six drug trafficking convictions, eight deportations, and two illegal reentry convictions prior to the underlying one in this instance, but was sentenced at the bottom of his Guideline range—despite having lived in near-continuous violation of the law for over four decades.

In sum, the district court did not abuse its discretion by imposing a sentence on the lowest end of the advisory Guidelines on Castro. On the contrary, the district court properly considered the applicable aggravating and mitigating circumstances presented by the parties and imposed a sentence individually tailored for Castro based on the evidence and arguments presented. *Dachman*, 743 F.3d at 262.

### III. CONCLUSION

The district court did not commit procedural error by not commenting on Castro's "fast-track disparity" argument at sentencing, and the bottom end of the advisory Guidelines term of 77 months' imprisonment imposed was not substantively unreasonable, even in light of the mitigation factors presented to the district court. For these reasons, we AFFIRM Castro's sentence.