In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 14-3590 & 15-1131

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE MELENDEZ and DENISE LAMBERT,

*Defendants-Appellants.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Western Division.
Nos. 13 CR 50006-7 & 13 CR 50006-5 — **Frederick J. Kapala**, *Judge.*

———————————

ARGUED SEPTEMBER 28, 2015 — DECIDED APRIL 20, 2016

———————————

Before FLAUM, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Defendants-Appellants Jose Melendez ("Melendez") and Denise Lambert ("Lambert") both pled guilty to participating in a heroin distribution conspiracy with Michael Craig ("Craig") and others. Melendez challenges his within-guidelines range sentence of 135 months' imprisonment, disputing the district court's finding that he is liable for between three and ten kilograms of jointly purchased heroin. Lambert challenges her within-

guidelines range sentence of 80 months' imprisonment as substantively unreasonable on several grounds. We affirm both sentences.

## I. BACKGROUND

From approximately March 2011 to November 2011, Melendez traveled with Craig to Chicago every two to three days to jointly purchase heroin from a supplier that Melendez introduced to Craig. For these purchases, Melendez and Craig pooled their money together to obtain a discounted bulk rate. After each purchase, they would return to Rockford, Illinois, to weigh and divide the heroin for separate distribution.

From approximately October 2010 to January 2012, Lambert, in addition to taking care of Craig's children, rented an apartment and vehicles that Craig used to store and transport heroin and heroin trafficking proceeds. During this time, Lambert delivered heroin mixtures and heroin trafficking proceeds between Craig and his co-conspirators. Lambert also agreed to transmit messages regarding drug sales activity between Craig and an individual who was cooperating with the FBI.

On November 26, 2013, a federal grand jury returned a superseding three-count indictment against Melendez, Lambert, and Craig. Count 1 charged Melendez, Lambert, and Craig with conspiring to possess with the intent to distribute and to distribute heroin, in violation of 21 U.S.C. § 846. Counts 2 and 3 charged Craig with distributing heroin, in violation of 21 U.S.C. § 841(a)(1).

On April 2, 2014, Melendez and Lambert each pled guilty to one count of conspiring to possess with the intent

to distribute and to distribute heroin, in violation of 21 U.S.C. § 846.

*A.  Melendez's Sentencing*

On November 13, 2014, the district court held Melendez's sentencing hearing.

After hearing witness testimony, the district court determined that the most reliable facts were found in Melendez's admissions made in his plea agreement and January 10, 2012 written statement, which supported and supplemented his plea agreement. Relying on these written admissions, the district court found Melendez accountable for all the heroin jointly purchased by Melendez and Craig.

Next, the district court found, by a preponderance of the evidence, that the amount of heroin involved in Melendez's offense was greater than 3 kilograms but less than 10 kilograms. In reaching this conclusion, the court made two estimates of the drug quantities. For its first estimate, the court used Melendez's admissions in his plea agreement to assess an approximate amount of 4.8 kilograms of heroin. For its second estimate, the court used Melendez's admissions in his January 10, 2012 written statement to assess an approximate amount of 3.315 kilograms of heroin. The court found that both estimates supported a determination that the amount of heroin involved in Melendez's offense was greater than 3 kilograms but less than 10 kilograms.

Having so concluded, the district court adopted the presentencing report's assessment of a criminal history category of IV and offense level of 29, which yielded a guidelines range of 121 to 151 months. The court then sentenced Melendez to 135 months' imprisonment, a within-guidelines

range sentence, and entered judgment against him on November 21, 2014. Melendez's appeal follows.

### B. Lambert's Sentencing

On December 31, 2014, the district court held Lambert's sentencing.

The district court began by correcting a typographic error in the presentencing report and finding that Lambert's proper sentencing guidelines range was 78 to 97 months, based on a criminal history category of II and offense level of 27. Both parties agreed.

The district court then found that the guidelines calculations provided an appropriate baseline for evaluation of the § 3553(a) factors and these computations accounted for Lambert's responsibility for between one to three kilograms of heroin, her criminal history of II, and her acceptance of responsibility.

Next, in discussing Lambert's mitigating factors, the court noted that she had acknowledged a history of substance abuse, she had successfully completed counseling, she had serious health problems, and she had expressed deep remorse for what she had done. The court observed that, in aggravation, Lambert had a chronic history of noncompliance with probation and conditional discharge, she had violated her pretrial supervision on a number of occasions, and she had continued to recidivate, despite prior terms of incarceration and numerous criminal and traffic convictions.

The court also considered and rejected Lambert's various mitigation arguments for a downward variance, including those based on her reduced life expectancy and health is-

sues, her limited role in the heroin conspiracy, her prior limited criminal history, and her history and characteristics.

In conclusion, the district court sentenced Lambert to 80 months' imprisonment, a within-guidelines range sentence, and entered judgment against her on January 16, 2015. Lambert's appeal follows.

## II. ANALYSIS

We begin with Melendez's appeal, which disputes the district court's finding that he is liable for between three and ten kilograms of jointly purchased heroin. Then, we address Lambert's appeal, which challenges her sentence as substantively unreasonable.

### A. Melendez's Sentence

"We review the district court's interpretation and application of the sentencing guidelines de novo and review its factual findings for clear error." *E.g.*, *United States v. Salem*, 657 F.3d 560, 563 (7th Cir. 2011). "A factual finding is clearly erroneous only if after reviewing the evidence we are firmly convinced that a mistake has been made." *Id.* (internal quotation marks omitted). "The district court may draw reasonable inferences from the record in making its factual findings at sentencing." *Id.*

Melendez raises two challenges to factual determinations regarding his sentence. First, Melendez argues that the district court erred in finding him accountable for all of the heroin jointly purchased by Craig and him as part of the conspiracy. Second, Melendez contends that the district court calculated incorrectly the amount of heroin jointly attributable to him.

*1. Accountability for All Jointly Purchased Heroin*

This court has held that "[f]or sentencing purposes, a criminal defendant convicted of a drug trafficking conspiracy is liable for the reasonably foreseeable quantity of drugs sold by his or her co-conspirators." *United States v. Seymour*, 519 F.3d 700, 710–11 (7th Cir. 2008).

In the present case, the district court's finding that Melendez was accountable for all of the heroin that he and Craig jointly purchased was supported by evidence in the record, including Melendez's admissions in his plea agreement and his January 10, 2012 written statement, which the district court explicitly found to contain the most reliable facts.

Melendez pled guilty to conspiracy to distribute heroin and therefore "is liable for the reasonably foreseeable quantity of drugs sold by his or her co-conspirators." *Seymour*, 519 F.3d at 710–11. Melendez's admissions support a finding that Melendez reasonably foresaw the entire amount of heroin jointly purchased by him and Craig. In fact, Melendez was substantially involved in and had direct knowledge of the entire amount of jointly purchased heroin because he introduced Craig to their drug supplier, he traveled with Craig to Chicago to purchase the heroin, he pooled his money with Craig to obtain a discounted bulk rate, and he traveled with Craig to Rockford to weigh and divide the joint purchase.

We are unpersuaded by Melendez's argument that he should not be held accountable for Craig's portion of the jointly purchased heroin because Craig distributed his portion of the heroin as part of a "separate business." Here, reasonable foreseeability is the proper inquiry, and we have

held that reasonable foreseeability "does not require [a showing] that the defendant was involved in or even had direct knowledge of any particular transaction." *Seymour*, 519 F.3d at 711. As discussed, Melendez's admissions support a finding that Melendez reasonably foresaw the entire amount of heroin jointly purchased by him and Craig. Therefore, it is immaterial that Craig distributed his portion through a separate business venture.

Thus, the district court did not commit clear error in finding Melendez accountable for all the heroin jointly purchased by Craig and him.

### 2. *Estimate of Heroin Amount*

"A convicted defendant has a due process right to be sentenced on the basis of accurate information." *United States v. Bozovich*, 782 F.3d 814, 817 (7th Cir. 2015) (internal quotation marks omitted). Under this general principle, "it is well-established that a preponderance of the evidence is all that is required for a factual finding of drug quantity under the Sentencing Guidelines, due process concerns notwithstanding." *Id.* at 818. Because determining drug quantities under the sentencing guidelines is frequently difficult, "district courts may make reasonable though imprecise estimates based on information that has indicia of reliability." *Id.* "[A] district court choosing among plausible estimates of drug quantity should normally err on the side of caution. *Id.* (internal quotation marks omitted). However, "a district court does not automatically commit clear error when it fails to use the most conservative calculation possible." *Id.*

In the instant case, the district court used reliable information to make two reasonable determinations of the heroin amount attributable to Melendez.

In its first estimate, the district court used Melendez's admissions in his plea agreement to assess an approximate amount of 4.8 kilograms of heroin. In his plea agreement, Melendez admitted that he made a purchase every 2 to 3 days from approximately March 1, 2011 through November 1, 2011. From this, the district court estimated that Melendez made a purchase, on average, every 2.5 days, or 12 times per month, for 8 months. The district court then estimated that each purchase involved approximately 50 grams of heroin because, on an average trip, Melendez jointly purchased $4000 of heroin at a rate of $80 per gram. From these figures, the district court found that Melendez's plea agreement supported a reasonable determination of a total quantity of 4.8 kilograms of heroin.

In its second estimate, the district court used Melendez's admissions in his January 10, 2012 written statement to assess an approximate amount of 3.315 kilograms of heroin. In his written statement, Melendez admitted that he made a purchase every 2 to 3 days from approximately February or March 2011 through November 2011. From this, the district court estimated that the Melendez made a purchase, on average, every 2.5 days, or 12 times per month, for 8.5 months. The district court then estimated that each purchase involved approximately 32.5 grams of heroin. From these figures, the district court found that that Melendez's January 10, 2012 written statement supported a reasonable determination of a total quantity of 3.315 kilograms of heroin.

Furthermore, both of the district court's reasonable estimates—the first for 4.8 kilograms of heroin and the second for 3.315 kilograms of heroin—support its finding that the amount of heroin involved in Melendez's offense was greater than 3 kilograms but less than 10 kilograms. Consequently, there is no issue regarding the court's choice "among plausible estimates of drug quantity." *Bozovich*, 782 F.3d at 818 (internal quotation marks omitted).

Melendez's only challenge to the district court's calculation of the amount of jointly purchased heroin relates to the court's assessment of the number of trips taken by Craig and Melendez to Chicago to purchase heroin. Melendez contends that the district court should have found only 2.5 trips per week, resulting in 10 trips per month. Melendez further argues that taking 52 weeks, dividing them into 12 months, and multiplying the result by 2.5 trips per week equal 10.8 trips per month.

While mathematically correct, Melendez's calculations are based on an incorrect assertion—that the district court found that there were 2.5 trips to Chicago per week. Instead, relying on Melendez's admission that he "purchased on average every two and a half days," the district court found that Melendez and Craig traveled to Chicago and jointly purchased heroin "every 2.5 days," resulting in 12 trips per month.[1]

---

[1] The district court's calculations were mathematically correct: (1) it used Melendez's admission to find that Melendez and Craig took 1 trip every 2.5 days, (2) it estimated that a month contains 30 days, (3) it divided 30 days by 2.5 days, and (4) it arrived at the result of 12 trips per month.

Hence, the district court did not commit clear error in its determination of the amount of heroin attributable to Melendez.

### B. *Lambert's Sentence*

Lambert raises three arguments on appeal, each challenging her within-guidelines range sentence as substantively unreasonable. First, she argues that the court gave insufficient weight to her reduced life expectancy and health issues. Second, she contends that the court gave too much weight to her role in the offense and prior criminal history. Third, Lambert asserts that the court's finding that she had a history of noncompliance with probation and conditional discharge, as well as a history of violating pretrial release, was contrary to the evidence.

This court reviews "the substantive reasonableness of a defendant's sentence for an abuse of discretion." *United States v. Castro-Alvarado*, 755 F.3d 472, 477 (7th Cir. 2014); *see also Gall v. United States*, 552 U.S. 38, 51 (2007). "We will uphold [a] sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *United States v. Annoreno*, 713 F.3d 352, 359 (7th Cir. 2013) (alteration in original) (internal quotation marks omitted). The district court enjoys discretion in assigning weights to the § 3553(a) factors. *United States v. Smith*, 721 F.3d 904, 908 (7th Cir. 2013). "True, the weighting of the § 3553(a) factors must fall within the bounds of reason, but those bounds are wide." *Id.* (internal quotation marks omitted).

Moreover, in this circuit, where "the district court sentenced the defendant to a within-guideline range sentence,

there is a presumption of reasonableness." *Castro-Alvarado*, 755 F.3d at 477. "To sustain the presumption, a district court need provide only a justification for its sentence adequate enough to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* (internal quotation marks omitted). The fact that the appellate court "'might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.'" *United States v. Scott*, 555 F.3d 605, 610 (7th Cir. 2009) (quoting *Gall*, 552 U.S. at 51).

The defendant bears the burden of overcoming this presumption of reasonableness "by demonstrating that his or her sentence is unreasonable when measured against the factors set forth in § 3553(a)." *United States v. Vallar*, 635 F.3d 271, 279 (7th Cir. 2011) (internal quotation marks omitted). This burden is "a hefty one." *Castro-Alvarado*, 755 F.3d at 477 (internal quotation marks omitted).

Here, the district court did not abuse its discretion because Lambert's within-guidelines range sentence is presumptively reasonable, and Lambert failed to overcome this "hefty" presumption. *Id.* at 477. Furthermore, the court adequately explained why Lambert did not warrant a below-guidelines range sentence. We discuss each of Lambert's challenges in turn.

1. *Reduced Life Expectancy and Health Issues*

Lambert first argues that the district court erred in not imposing a below-guidelines range sentence given her reduced life expectancy and health issues. Her arguments are without merit.

At sentencing, the district court examined Lambert's mitigation argument relating to her reduced life expectancy. After noting that we have cautioned against imposing a de facto life sentence, *see, e.g.*, *United States v. Wurzinger*, 467 F.3d 649, 652–53 (7th Cir. 2006), the district court observed that a middle-of-guidelines range sentence of 87 months, which could be reduced to 74 months with good-time credit, fell below Lambert's life expectancy of 90 months. The court further recognized that Lambert's imposed sentence of 80 months, which could be reduced to 68 months with good time credit, falls well below Lambert's life expectancy of 90 months and was therefore not a de facto life sentence. This discussion was sufficient for the court to rule that the situation was not "so dire as to require a sentence below the advisory guidelines range in order to avoid a de facto sentence of life imprisonment." Lambert Sent. Tr. 29; *see United States v. Cheek*, 740 F.3d 440, 456–47 (7th Cir. 2014) (affirming a within-guidelines sentence over a substantive unreasonableness challenge based on a de facto life sentence).

The district court also contemplated Lambert's mitigation argument based on her health issues. The court stated that although it must consider Lambert's medical care needs, these considerations do not require the court to overlook or excuse Lambert's criminal conduct simply because she has medical issues. The court noted that U.S.S.G. § 5H1.4 provides that "extraordinary physical impairment" may be a reason for a downward departure, but it ruled that Lambert did not have an "extraordinary physical impairment" or was seriously infirm. This analysis was adequate for the court to find that Lambert's medical history or current medical issues did not warrant a below-guidelines range sentence. *See Unit-*

*ed States v. Pilon*, 734 F.3d 649, 656–57 (7th Cir. 2013) (affirming a within-guidelines range sentence over a substantive unreasonableness challenge based on health issues).

Thus, the district court did not abuse its discretion in finding that Lambert's reduced life expectancy and health issues did not warrant a downward variance.

### 2. *Role in Offense and Prior Criminal History*

Lambert next contends that the court erred in not imposing a below-guidelines range sentence for her lesser role in the heroin conspiracy and prior criminal history. These contentions fail.

The district court considered Lambert's mitigation argument regarding her limited role in the heroin conspiracy and acknowledged that Lambert did not directly purchase, mix, or sell heroin to customers. At the same time, the court noted that Lambert also had admitted to the following: she rented an apartment and vehicles for Craig which were used to store and transport heroin and heroin trafficking proceeds, she delivered heroin mixtures and heroin trafficking proceeds between Craig and his co-conspirators, and she transmitted messages between Craig and a confidential informant. The court's discussion was enough to find that even though Lambert played a subservient and lesser role, "it does not show that her role within the overall conspiracy was minor or would otherwise provide her with mitigation for her criminal conduct." Lambert Sent. Tr. 33; *see also United States v. Townsend*, 520 F. App'x 473, 475–76 (7th Cir. 2013) (affirming a within-guidelines range sentence over a substantive unreasonableness challenge based on a lesser role in a conspiracy).

The district court also addressed Lambert's mitigation argument relating to her prior criminal history. The court observed that although Lambert's last criminal conviction occurred in 2004, she had been involved in a heroin conspiracy since then. Furthermore, the court determined that Lambert presented a risk to the public because her criminal conduct had escalated from theft-based offenses to involvement in a large-scale drug conspiracy, and it cited specific and general deterrence rationales. Thus, the court was appropriately justified in not finding a basis for a below-guidelines range sentence on account of Lambert's criminal history. *See United States v. Marin-Castano*, 688 F.3d 899, 904–05 (7th Cir. 2012) (affirming a within-guidelines range sentence over a substantive unreasonableness challenge based on a limited criminal history).

Accordingly, the district court did not abuse its discretion in finding that Lambert's role in the conspiracy and prior criminal history did not warrant a downward variance.

3. *Probation, Conditional Discharge, Pretrial Release History*

Lambert last asserts that the court's determination that she had a history of noncompliance with probation and conditional discharge, as well as a history of violating pretrial release, was contrary to the evidence. These assertions are unpersuasive.

Lambert argues that she only violated probation on three occasions and she fully complied the other nine times. This argument fails, however, because these three violations occurred over an extended period of time—when Lambert was 24, 26, and 31 years old—which evidences a history of noncompliance. More importantly, the record shows that for

over a decade, Lambert repeatedly committed new offenses while serving multiple terms of court supervision, further supporting a finding of a history of noncompliance.[2] As such, the court's conclusion that Lambert had a history of noncompliance with probation and conditional discharge is more than reasonable.

In addition, Lambert contends that all of her pretrial violations were sufficiently explained, they did not result in any sanctions, and they led the department to support increasingly relaxed conditions of pretrial release. But, this argument is unpersuasive because the evidence demonstrates multiple violations of pretrial release—she violated curfew three times, she failed to appear for a drug test once, and she tested positive for cocaine twice. The fact that these violations were explained and sanction-free does not foreclose a finding of a history of pretrial violations. Thus, the court's assessment that Lambert had a history of violations of pretrial release was appropriate.

Consequently, the record supports the district court's determination that Lambert had a history of noncompliance with probation and conditional discharge, as well as a histo-

---

[2] While serving one year of probation for a retail theft conviction entered March 16, 1982, Lambert committed theft on July 13, 1982. While serving one year of probation for battery entered October 22, 1984, she committed felony disorderly conduct on November 15, 1984. While serving 12 months of conditional discharge for two retail theft convictions entered May 1, 1989, she committed retail theft on August 4, 1989. While on one year of probation for a deceptive practice conviction entered April 23, 1997, she committed attempted obstruction of justice and possession of drug paraphernalia on March 5, 1998. While serving 60 months of probation for a retail theft conviction entered January 28, 2000, she committed several driving offenses.

ry of violating pretrial release. Furthermore, the court did not abuse its discretion in relying on this aggravating factor to impose a within-guidelines range sentence.

### III. CONCLUSION

For the foregoing reasons, Melendez's and Lambert's sentences are AFFIRMED.