In the

# United States Court of Appeals
### For the Seventh Circuit

No. 18-1083

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL CLARK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 CR 381 — **John Z. Lee**, *Judge.*

ARGUED SEPTEMBER 20, 2018 — DECIDED OCTOBER 18, 2018

Before MANION, HAMILTON, and SCUDDER, *Circuit Judges.*

MANION, *Circuit Judge.* Michael Clark pleaded guilty to distributing fentanyl. The district court sentenced him to 71 months' imprisonment and 5 years of supervised release. Clark appeals that sentence, arguing the district court improperly calculated his criminal history category and inadequately justified the length of the term of supervised release. We affirm the district court.

**I.**

This is not Clark's first encounter with the criminal justice system. In 2007, he was convicted of criminal trespass to a vehicle. In 2008, he was convicted of battery. That same year, he was convicted of reckless conduct. In 2010, he received a federal conviction in the District of Minnesota for conspiring to distribute controlled substances, a crime for which he was sentenced to 60 months' imprisonment. While he was on supervised release for that conviction, he committed the instant offense of distributing fentanyl. He was indicted for that crime on July 6, 2016, and pleaded guilty in the Northern District of Illinois on March 1, 2017.

Before Clark's September 7, 2017, sentencing hearing, the Probation Office counted up Clark's convictions to determine his criminal history category. The Probation Office gave Clark three points for the 2007 and 2008 state convictions (one point each), three points for the 2010 federal conviction, and two points for the fentanyl conviction. These eight points placed Clark in criminal history category IV. With an offense level of 21, Clark's Guidelines range was 57 to 71 months' imprisonment. The Guidelines also recommended 3 years of supervised release.

Clark objected to the inclusion of his 2007 conviction for criminal trespass and his 2008 conviction for reckless conduct in his criminal history calculation. He asserted those convictions fell under the exception for certain misdemeanor convictions found in § 4A1.2(c) of the Sentencing Guidelines. If these convictions did not receive points, Clark's criminal history category would drop to III and his Guidelines range would reduce to 46 to 57 months' imprisonment.

The government conceded the 2007 conviction for trespass to a vehicle should not be counted, *see generally* U.S.S.G. § 4A1.2(c)(1) (excluding from the criminal history calculation misdemeanor convictions for "[t]respassing" under certain circumstances), but maintained the 2008 conviction for reckless conduct was properly included in the calculation.

The debate over the 2008 conviction was the initial focus of the sentencing hearing. In addition to arguing that his 2008 conviction fell within § 4A1.2(c)'s exclusion, Clark also brought up that the district court in Minnesota had not counted the 2008 conviction when it calculated his criminal history before his 2010 sentencing. Clark's counsel stated, "We like the [c]ourt to be consistent … in its approaches to these defendants." The government responded to this argument by urging the court to focus on the situation currently before it.

Without mentioning the Minnesota sentencing, the district court agreed with the government that the 2008 conviction did not fall within the exclusion. Therefore, Clark's criminal history category remained IV, and his Guidelines range remained 57 to 71 months. The parties then made their arguments for their requested sentences. Clark asked for a 41-month sentence, citing his difficult childhood and his young child. The government asked for a 108-month sentence, citing Clark's failure to take advantage of the benefits of supervised release after his last conviction and the harm fentanyl causes to the community. The government also requested a 5-year term of supervised release.

The district court then announced its sentence. The court observed Clark had been selling fentanyl and heroin in Chicago, northwestern Wisconsin, and other places "from at least 2014 to 2016 … even though he was on supervised release for" the 2010 conviction. Further, the court remarked on what it had earlier described as the "boastful and cavalier" way Clark had conducted his drug operations. Clark had bragged about his crime and boasted about how people were overdosing and dying after taking the drugs he was distributing. The court found Clark's conduct evidenced "a blatant disregard for … life, for the law, and complete disdain for the lives of others."

The court went on to note that Clark's earlier 60-month sentence had not deterred him from going back to distributing drugs when he was released. What is more, the court noted Clark had been selling drugs since 2002, with the only meaningful break being his time spent in federal custody (and perhaps a few months from November 2014 to January 2015 "when he says he was working for a company called American Auto Tires"). The court concluded Clark presented "a significant risk of recidivism."

Given all these considerations, the court sentenced Clark to 71 months' imprisonment. Referencing back to the criminal history calculation, the court stated that even if it had agreed with Clark about the 2008 conviction, it still would have imposed the 71-month sentence because the 60-month sentence for Clark's prior conviction had not been sufficient and because of "the seriousness and extensiveness and callousness" with which Clark had carried on his criminal activities. The court also imposed the government-requested 5 years of supervised release. The court stated it was necessary due to

"Clark's criminal history background and the nature of his activities."

Finally, the court announced the conditions of supervised release. Among them, Clark was prohibited from "excessive use of alcohol," which was "defined as having a blood alcohol concentration greater than .08 percent." The court also included a condition related to community service, capping any service required at 400 hours. The court issued its written judgment on October 10, 2017. The definition of "excessive use of alcohol" and the cap on community service were not included in the written judgment.

## II.

### A. Criminal History Calculation

Clark now appeals his sentence primarily on two grounds. First, he argues the district court committed procedural error by improperly calculating his criminal history score. Clark's argument is based predominantly on collateral estoppel: he believes the calculation of his criminal history in the District of Minnesota should bar any recalculation in this case.

As a general principle, it is well established that collateral estoppel (aka issue preclusion) applies in federal criminal cases. *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970). What is less established is how that doctrine applies with respect to findings made, and conclusions reached, in federal sentencing proceedings. *See United States v. Ellis*, 622 F.3d 784, 797 n.5 (7th Cir. 2010) ("It is unclear how the doctrine of issue preclusion applies in criminal sentencing."); *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 306 (2d Cir. 1999) ("While we do not foreclose application of the doctrine in all sentencing cases,

we caution that it should be applied only in those circumstances where it is clearly fair and efficient to do so."). In *Ellis*, we avoided the issue because we agreed with the defendant on the merits. 622 F.3d at 797 n.5. Here, we again decline to take it on, but this time because we conclude that even if the district court erroneously calculated Clark's criminal history category, any such error would be harmless. *See generally PDK Labs. Inc. v. U.S. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("[I]f it is not necessary to decide more, it is necessary not to decide more … .").

In a criminal-sentencing case, a finding of harmless error "removes the pointless step of returning to the district court when we are convinced that the sentence the judge imposes will be identical to the one we remanded." *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009). We will find harmless error "when the government has proved that the district court's sentencing error did not affect the defendant's substantial rights." *Id.* Put another way, "the government must be able to show that [the error] 'did not affect the district court's selection of the sentence imposed.'" *Id.* (quoting *United States v. Anderson*, 517 F.3d 953, 965 (7th Cir. 2008)). We have consistently concluded that where a district judge makes clear that he would have applied the same sentence irrespective of an auxiliary decision, any error in such a decision is harmless. *See United States v. Thomas*, 897 F.3d 807, 817 (7th Cir. 2018) (noting a Guidelines error does not "affect the ultimate sentence" where "the sentencing judge makes clear that the defendant's sentence simply does not depend on the resolution of a guideline issue"); *Abbas*, 560 F.3d at 667 ("[O]ur harmless error determination is simplified by the fact that the

sentencing judge expressly stated that she would have imposed the same sentence even if [the enhancement] did not apply to the defendant's sentence. … And she did so with a detailed explanation of the basis for the parallel result; this was not just a conclusory comment tossed in for good measure."); *see also United States v. Tate*, 822 F.3d 370, 378 (7th Cir. 2016) (vacating the sentence where "the district judge did not clearly indicate that he would have imposed the same sentence absent the … enhancement").

That is precisely the situation we have here. After it announced the 71-month term of imprisonment, the district court expressly stated that it would have imposed the same sentence even if Clark's criminal history category had been lower. The court explained that the failure of Clark's prior 60-month sentence to deter him from further criminal conduct and the characteristics of his instant offense justified the sentence nevertheless. Therefore, an error in calculating Clark's criminal history category, if any, would be harmless because it had no effect on the sentence imposed.[1]

---

[1] Clark argues that even if the criminal history calculation did not affect his sentence, the error in that calculation itself violated his "substantial rights" because the Bureau of Prisons uses a defendant's criminal history category to classify prisoners and because the criminal history category determined at sentencing is used to determine the sentencing ranges for revocation of supervised release. Clark cites no authority suggesting these kinds of collateral effects infringe on "substantial rights." On the contrary, the cases focus on the effect any error has on the defendant's sentence itself. *See, e.g.*, *United States v. Smith*, 223 F.3d 554, 578–79 (7th Cir. 2000) (concluding any error in calculating the defendant's criminal history category was harmless because it did not affect his Guidelines range).

**B. Supervised Release**

Clark also challenges the length of his term of supervised release. He argues the district court did not give a sufficient explanation for departing from the recommended 3-year term.

"A sentencing court commits procedural error where it … fails to adequately explain the basis for the chosen sentence." *United States v. Castro-Alvarado*, 755 F.3d 472, 475 (7th Cir. 2014). If the court chooses to depart from the Guidelines' recommendations, it must support "[a] major departure … [with] a more significant justification than a minor one." *United States v. Miller*, 601 F.3d 734, 739 (7th Cir. 2010) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).

Here, Clark criticizes the district court for its "sparse" explanation of the 5-year term of supervised release. The district court stated, "I believe that five years is necessary in light of Mr. Clark's criminal history background and the nature of his activities." Clark asserts one sentence of explanation is not sufficient to justify adding two years to a 3-year recommendation.

But that one sentence is not the whole explanation. "[A]t sentencing a district court hands down only one 'sentence,' which can include a term of supervised release." *United States v. Bloch*, 825 F.3d 862, 869 (7th Cir. 2016). Accordingly, we do not require district courts to give separate justifications for the different parts of the sentence. Instead, "a district court need only provide one overarching explanation and justification … for why it thinks a criminal sentence comprised of both terms of imprisonment and supervised release is appropriate." *Id.* at 870.

When it announced Clark's term of imprisonment, the district court went into considerable detail about its reasons for imposing the sentence and its concerns with Clark's situation. The court particularly focused on Clark's attitude in committing his crime, his risk of recidivism, and the fact that the earlier sentence was insufficient to deter Clark from future crimes. We interpret the court's comment after imposing the term of supervised release as encompassing that explanation and those concerns. The court was not required to repeat itself. *See United States v. Oliver*, 873 F.3d 601, 611 (7th Cir. 2017) ("[T]he district court was not required to engage in 'a separate comprehensive analysis' of the § 3553(a) factors as they applied to [the defendant's] term of supervised release after extensively discussing those same factors with respect to [the defendant's] prison sentence." (quoting *United States v. Anderson*, 604 F.3d 997, 1003 (7th Cir. 2010))).

### III.

For the reasons set forth above, we AFFIRM the sentence. Additionally, we note Clark raises two discrepancies between the district court's oral pronouncement of his supervised release conditions and the written judgment. Namely, the written judgment fails to include a definition for "excessive use of alcohol" and the announced cap on community service. Given these apparent clerical errors in the district court's written judgment, we REMAND WITH INSTRUCTIONS for the district court to enter a corrected judgment reflecting the terms concerning "excessive use of alcohol" and the cap on community service announced at the sentencing hearing.