NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2019
Decided March 6, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-1167

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:12-CR-00003-004 |
| ANDRE PATTERSON, <br> *Defendant-Appellant*, | Sarah Evans Barker, <br> *Judge*. |

**O R D E R**

Andre Patterson was convicted of conspiring to steal cocaine and of possessing a gun as a felon. In his first appeal, we remanded the case for resentencing because the district court had not made a clear finding of the drug amount reasonably foreseeable to Patterson. On remand, the district court made an explicit drug-quantity finding. Now, in a second appeal, Patterson disputes whether the court adequately tied its new finding to facts in the record.

Because the district court relied too heavily on conclusory statements in the presentence report, to the exclusion of other record evidence that we had emphasized in the first appeal, we again vacate the judgment and remand for resentencing. We stress

that the current sentence—156 months' imprisonment—may well turn out to be reasonable. Before we can reach that conclusion, however, the district court must support its drug-quantity finding with an adequate discussion of reliable evidence in the record. Alternatively, if the district court is convinced that the 156-month term is the right sentence, even if Patterson is held accountable for a lower drug quantity, then the court should explain and support that conclusion in light of the statutory sentencing factors.

## I.  Background

Patterson agreed to help rob a stash house of cocaine—but the operation was a sting, and the stash house and drugs were a fiction. Dennis English (a co-conspirator), a confidential informant, and an undercover agent posing as a disgruntled drug courier met with Patterson to discuss their plan. The agent boasted that his prior work at the stash house involved amounts like 6 or 10 kilograms of cocaine, but then embellished further:

> "[L]ast month I picked up ten and there's a—I aint shitting, man, there's at least twenty on that table. Like when I get my ten, there's at least that much there too."

Patterson suggested the crew should enter the house only after the courier picked up his delivery amount and left. But English objected that the group would thereby lose 10 kilograms. Patterson replied, "Yeah, but that don't matter."

As the conversation continued, English mused that the stash-house guards would be heavily armed to protect a pricey "20 bricks" (20 kilograms) of cocaine. Recordings of this meeting furnished "[t]he only evidence directly establishing how much cocaine Patterson might have anticipated would be at the stash house." *United States v. Patterson*, 872 F.3d 426, 438 (7th Cir. 2017).

Throughout the meeting, Patterson's delusional disorder was on display. He insisted he knew there was an armed "mystery man" in the back of the nonexistent stash house. He asserted that huge amounts of cash would be there "[be]cause I'm gonna mentally put it there." And he told the undercover agent of a godly mission: "[Y]ou all looking at it as a score. I'm looking at it like the Lord sent me to protect you."

Police arrested Patterson when the crew arrived at a staging point. The ensuing pretrial proceedings were marked by years-long efforts—ultimately successful, it appears—to render Patterson mentally fit. At trial he disputed his involvement in the conspiracy but stipulated that "20 kilograms (44 pounds) of cocaine is an amount of cocaine that is consistent with being possessed for further distribution." The jury found him guilty of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, 21 U.S.C. §§ 841(a)(1), 846, and possessing a firearm as a felon, 18 U.S.C. § 922(g)(1).

The district court initially sentenced Patterson to 168 months in prison (the low end of a guidelines range based on a 20-kilogram drug quantity), and he appealed. We vacated this sentence and remanded the case because the district court "did not make an express finding of drug quantity or explain the reasoning behind that quantity at the sentencing hearing." *Patterson*, 872 F.3d at 438. Specifically, the presentence investigation report ("PSR") on which the court relied did not explain the factual basis for any drug quantity attributable to Patterson. *Id.* We emphasized that Patterson's delusional disorder made it crucial to assess whether he really was aware of the 20-kilogram quantity or instead entitled to a sentence based on a 10- or 6-kilogram figure. *Id.* at 438–39 & n.4.

On remand, Patterson asked the district court to consider psychological evaluations addressing his impaired decision-making and perception at the time of the crime. More than that, he pointed the court to our statement that his "mental health at the time of the offense" made it unclear which drug quantity he had reasonably foreseen. *See Patterson*, 872 F.3d at 439 n.4.

But the district court expressly found that Patterson reasonably foresaw obtaining 20 kilograms of cocaine, thus leaving the original offense level of 32 and guidelines range of 168 to 210 months intact. In reaching that conclusion, the court said it relied on the trial record as a whole, the PSR, and "the conversation that was testified to with respect to the 20 kilograms being the object of the conspiracy." Specifically, "Patterson was present and participating … in the conversation about the 20 kilograms. The stipulation [i.e., that 20 kilograms would be a distribution quantity rather than a personal-use quantity] is corroborative of that." The court reasoned that the other amounts mentioned by the undercover agent (like 6 or 10 kilograms) were "prior distributions … [that] don't really relate to the conspiracy at hand." The district court also said it had read the psychological evaluations but did not explain how (if at all) Patterson's mental health affected the drug-quantity determination.

Although the guidelines range had not changed, the district court took the opportunity to sentence Patterson to 156 months—one year less than the previous sentence—apparently because he had taken steps to rehabilitate himself through various prison programs. The court further remarked on Patterson's prior difficulty becoming mentally fit for trial and his criminal history (which included one conviction for striking his girlfriend in the face with a drinking glass, one for other domestic violence, and pending charges for battering and threatening a victim). The court also noted the violent role in the scheme that Patterson had imagined for himself, as evidenced by his "breathtaking" remarks about his willingness to kill to effectuate the robbery.

At the end of the hearing, Patterson's counsel reasserted that the offense level should be 30 (for a drug quantity of 5 to 15 kilograms) rather than 32 (for 20 to 50 kilograms), *see* U.S.S.G. § 2D1.1(4), (5). The district court replied, "The effect of the sentence that I've imposed, 156 months, is within the level 30 guideline range. So there would have been no legal effect if I accepted your position because I just went around the barn in a different direction."

In other words, the district court recognized the chosen sentence fell within both of the overlapping ranges at issue. If 20 kilograms were the right quantity, then the 156-month term would lie below the bottom of the advisory range (168 to 210 months). Meanwhile, if the drug quantity were 6 or 10 kilograms, then 156 months would lie near the top of the advisory range (135 to 168 months). Critically for this appeal, however, the district court stopped there. It did not say, unequivocally, it would select 156 months even if it were sure the lower guideline range applied.

## II. Discussion

Patterson argues the district court had no basis for choosing 20 kilograms over 10—especially given our remand for a clearer discussion on that point, as well as the potential effect of his mental illness on his understanding of the conspiracy. The fair import of our opinion in the first appeal was that the sentencing court needed to explain, specifically in light of Patterson's mental illness and other relevant information in the record, why he should be held accountable for the largest drug amount discussed by the scheme's other participants. *See Patterson*, 872 F.3d at 438–39. And we specifically cautioned against overreliance on the original PSR, which stated "without analysis or discussion" that Patterson was liable for 15 to 50 kilograms of cocaine. *Id.* at 438. Today,

we again review the district court's drug-quantity finding for clear error. *United States v. Saunders*, 826 F.3d 363, 374 (7th Cir. 2016).

On remand, the district court relied on three factors for its calculation: Patterson's prior stipulation that 20 kilograms would be a distribution quantity (even though the stipulation does not necessarily entail that Patterson actually anticipated 20 kilograms); an updated PSR reciting the 20-kilogram amount (even though the new PSR included only a conclusory assertion that Patterson acknowledged, at a meeting with the robbery crew, that 20 kilograms were at issue); and the fact that some crew members uttered the 20-kilogram figure at the meeting Patterson attended, as revealed in the transcripts. Only the last reason finds support in the record—and it was not enough to prevent this court from remanding the case in the first appeal.

The scant evidence regarding the drug quantity foreseeable to Patterson—when coupled with the special need for judicial care in calculating a drug quantity for a sting involving fictitious drugs, and when further combined with the district court's obligation to follow this court's mandate—required the court to say more if it wished to rely on a 20-kilogram finding. *See United States v. White*, 883 F.3d 983, 990–91 (7th Cir. 2018); *United States v. Dean*, 574 F.3d 836, 845–46 (7th Cir. 2009); *United States v. White*, 406 F.3d 827, 831 (7th Cir. 2005). Patterson's presence at a single meeting with the robbery crew, where multiple figures were mentioned, was the PSR's sole—yet untenable—basis for its assertion that Patterson "discussed" that he and English would "seize[] the 20 kilograms of cocaine." The transcript of that meeting reveals Patterson said no such thing. The district court essentially relied on the same assumptions made in the PSR, and thus did not fully adhere to our instructions on remand.

The government, for its part, argues this error was harmless. It interprets the district court's comment that "there would be no legal effect" to using a different guidelines range and (more colorfully) that it "just went around the barn in a different direction" to mean that it would have imposed a 156-month sentence regardless of the disputed guidelines issue. We cannot be sure. True, we will treat as harmless any error in the choice between the two competing guidelines calculations when the court fully explains the sentence in light of the § 3553(a) factors and makes clear that a change in the advisory range would not make a difference. *See, e.g., United States v. Clark*, 906 F.3d 667, 671 (7th Cir. 2018). But here the district court's comment "falls short of the 'detailed explanation' we have found sufficient to show harmless error." *United States v. Johns*, 732 F.3d 736, 740–42 (7th Cir. 2013) (quoting *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009)). We recognize that the court reduced Patterson's sentence by 12 months

compared to the previous sentence, at least in part to credit his rehabilitation efforts in prison. Perhaps the district court also meant this reduction to account for the possibility that he was responsible for a lesser quantity of drugs—but again, we do not know.

Finally, we understand that an analysis of how Patterson's mental competence affected his understanding of the foreseeable drug quantity may closely resemble an examination of his capacity to join any conspiracy—yet that latter issue is not before us today, and we do not opine on it now.

### III. Conclusion

We acknowledge the difficulty that fictitious-stash-house cases present, and perhaps the district court ultimately can support a 20-kilogram finding here. Alternatively, the 156-month term of imprisonment may be justified even if the district court uses a lesser drug quantity. At the same time, we must stress the necessity for a district court to consider all pertinent evidence and sufficiently tie that evidence to its findings and the statutory sentencing factors, thereby ensuring an opportunity for meaningful appellate review.

For the foregoing reasons, Patterson's sentence is VACATED, and the case is REMANDED for resentencing.